Nathan Brown (SBN: 033482)
Brown Patent Law
15100 N 78th Way Suite 203
Scottsdale, AZ 85260
Phone: (602) 529-3474
Email: Nathan.Brown@BrownPatentLaw.com

Stefan Coleman
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Phone: (877) 333-9427
Facsimile: (888) 498-8946
Email: law@stefancoleman.com

Avi R. Kaufman*
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Phone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Attorneys for Plaintiff and the putative class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Daniel Declements**, individually, and on behalf of all others similarly situated,<br>　　　　*Plaintiff*,<br><br>v.<br><br>**HealthMarkets Insurance Agency, Inc.,** a Texas corporation,<br>　　　　*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Daniel Declements ("Declements" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant HealthMarkets Insurance Agency, Inc. ("HealthMarkets" or "Defendant") to stop HealthMarkets from violating the Telephone Consumer Protection Act by placing unwanted solicitation calls, sending unsolicited, autodialed text messages to consumers without their consent, including calls and texts to consumers registered on the National Do Not Call registry (DNC), and to otherwise obtain injunctive and monetary relief for all persons injured by HealthMarkets's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. HealthMarkets provides health insurance for individuals, families, and small businesses.

2. HealthMarkets provides its agents with leads, which the agents then solicit in order to sell Healthmarkets's insurance packages.

3. Agents are instructed to engage in cold calling in order to generate insurance sales.

4. When soliciting business, HealthMarkets agents use an autodialer through which they place autodialed solicitation calls. In addition, the agents also send autodialed text messages to consumers.

5. However, HealthMarkets is calling and texting consumers using an autodialer without procuring the necessary express prior written consent that is required for these

communications. To make matters worse, HealthMarkets is also contacting consumers that have their phone numbers registered with the DNC.

6. In Plaintiff's case, HealthMarkets sent 2 autodialed text messages to his cellular phone, and placed 2 autodialed phone calls to his cellular phone, despite Plaintiff having his phone number registered with the DNC to avoid such solicitation attempts.

7. In response to these text messages and calls, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease from placing calls using an autodialer, sending unsolicited text messages to consumers' cellular telephone numbers using an autodialer, and otherwise calling telephone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes.

## PARTIES

8. Plaintiff Declements is a Rio Verde, Arizona resident.

9. Defendant HealthMarkets is a Texas corporation headquartered in North Richland Hills, Texas. Defendant conducts business throughout this District, the State of Texas, and throughout the United States.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

11. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant solicits consumers in this District, does significant business in this District, and because the wrongful conduct giving rise to this case occurred in this District.

CLASS ACTION COMPLAINT
-3-

# COMMON ALLEGATIONS

**HealthMarkets is Responsible for the Telemarketing Calls Placed by Its Agents**

12. HealthMarkets provides its agents with 3 things that are critical to the sale of HealthMarkets' insurance packages: Training, Technology and Leads.

**Training:**

13. HealthMarkets provides a full training program that is designed to prepare agents to make sales.[1]

14. It provides agents with access to HealthMarkets University where agents learn business plan development, receive instructor-led training and receive ongoing coaching and mentorship.[2]

15. Upon information and belief, the training teaches agents how to place cold calls to consumers.

16. HealthMarkets even provides its insurance agents with call scripts that should be used in order to solicit business from consumers.[3]

17. Cold calling is specifically referenced in job postings for HealthMarkets agents as something that builds a successful business:

---

[1] https://www.healthmarketscareers.com/join-our-team/
[2] https://www.healthmarketscareers.com/#support - click on "Learn More" under "Training"
[3] https://five9.healthmarkets.com/NewIBU65Script2.html

CLASS ACTION COMPLAINT
-4-

What Requirements build a successful business?

- Coachable, entrepreneurial and competitive spirit
- Compassion and passion for helping people and making a difference in their lives
- Prime listening skills with clear communication
- Thrive on prospecting, cold calling, canvassing and leveraging your territory to gather leads and new customers
- Competitive spirit and driven by your own success
- Self-disciplined, self-motivated, high energy and persistent
- A "fun go-getter"

[4]

18. Agents have even gone so far as to describe their job working for HealthMarkets as "a cold calling sales job."[5]

19. Another agent described their typical day as consisting of "75+ cold calls/leads."[6]

**Technology:**

20. HealthMarkets agents are provided with access to the Five9 autodialer.[7]

21. The autodialer works by loading in a list of contacts that should be called. Once the dialer is started, it automatically calls the next lead without human intervention, once an agent selects a disposition (status of the lead):

---

[4] https://www.glassdoor.com/job-listing/licensed-insurance-agent-healthmarkets-JV_IC1137055_KO0,24_KE25,38.htm?jl=2905486532&ctt=1548766837533&srs=EI_JOBS
[5] https://www.glassdoor.com/Reviews/Employee-Review-HealthMarkets-RVW16055940.htm
[6] https://www.indeed.com/cmp/Healthmarkets/reviews?ftopic=paybenefits
[7] https://slideplayer.com/slide/4013219/

CLASS ACTION COMPLAINT
-5-



[8]

22. Certain dispositions that the agent sets in the dialer will trigger additional phone calls to be made to the consumer at a later date, or time.

23. For example, if the agent selects "Left Message", Five9 will automatically schedule another call 48-hours later:



[9]

Similarly, selecting "No Message Left" will automatically schedule a second call 2 hours later in the day.

---

[8] id – slide 3
[9] id – slide 24

CLASS ACTION COMPLAINT
-6-

**Leads:**

24.     In addition to encouraging its agents to generate through general cold calling, HealthMarkets provides agents with its own leads to cold call.

25.     There are numerous complaints posted online about the leads that HealthMarkets provides, such as:

- "Customer Leads are a joke."[10]
- "bad leads."[11]
- "No good leads"[12]
- "New Producers were given Leads that were already worked over, and by several people many times."[13]
- "Paid for my leads and were always useless old leads."[14]

26.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

27.     Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing autodialed calls and sending autodialed solicitation text messages to cellular telephone numbers such as Plaintiff's.

28.     HealthMarkets agents are trained to place cold calls to consumers, oftentimes

---

[10] https://www.indeed.com/cmp/Healthmarkets/reviews?ftopic=paybenefits
[11] *id*
[12] *id*
[13] https://www.indeed.com/cmp/Healthmarkets/reviews?ftopic=paybenefits
[14] https://www.indeed.com/cmp/Healthmarkets/reviews?ftopic=paybenefits&start=20

using leads that were provided by HealthMarkets itself.

## PLAINTIFF'S ALLEGATIONS

**Plaintiff Received Unwanted Autodialed Calls and Text Messages to His Cell Phone Number, Despite Plaintiff Registering His Phone Number on the DNC**

29. On December 6, 2008, Plaintiff registered his cellular telephone number on the DNC in order to avoid receiving unsolicited calls and text messages.

30. Plaintiff uses his cellular phone for personal use only. Plaintiff's cellular phone number is not associated with a business.

31. On January 2, 2019 at 3:45 PM, Plaintiff received an unsolicited phone call to his cellular phone from Defendant using phone number 720-925-9569. The call was not answered, but a voicemail was left regarding booking an appointment with Lauren Taylor for an insurance quote.

32. After the voicemail was left on his cellular phone, Plaintiff received an autodialed text message from Defendant to his cellular phone using phone number 720-925-9569 on January 2, 2019 at 4:45 PM:

> AT&T   41% 3:45 PM
>
> +17209259569
> 4:45 PM, Jan 2
>
> Hello Daniel, this is Debby with Lauren Taylor's office at Health Markets. Lauren is a licensed broker ready to assist you with your health insurance needs. She works directly with Connect for Health Colorado. There is no cost or obligation for Lauren's services. I would like to set up an in office appointment with you and Lauren so she may further assist you, when is a good day and time for you? HMIA004933

33. It is believed that the text message Plaintiff received on January 2, 2019 at 4:45

CLASS ACTION COMPLAINT
-8-

PM was autodialed because it was automatically sent by Defendant's dialer system when Plaintiff did not answer the phone call he received at 4:44 PM on January 2, 2019.

34. On January 22, 2019 at 12:47 PM, Plaintiff received an unsolicited phone call to his cellular phone from Defendant using phone number 720-925-9569. Plaintiff did not answer this call and no message was left.

35. On January 22, 2019 at 12:48 PM, right after receiving the call that was not answered, Plaintiff received exactly the same autodialed text message he had received on January 2, 2019, again from phone number 720-925-9569 on his cellular phone:



36. As with the January 2, 2019 text message that Plaintiff received, it is believed that Defendant's dialer system automatically sent an autodialed text message to Plaintiff when he didn't answer the January 22, 2019 call that he received at 12:47 PM.

37. Plaintiff does not have a relationship with HealthMarkets or any of its affiliated companies, nor has he ever requested that HealthMarkets call him or consented to any contact from Defendant.

38. Upon information and belief, the 2 unsolicited phone calls that Declements

received on his cellular phone were autodialed, based on the fact that HealthMarkets agents use the Five9 dialer.

39. Simply put, HealthMarkets did not obtain Plaintiff's prior express written consent to call and send solicitation text messages to his cellular telephone using an autodialer.

40. The unauthorized calls and text messages sent by HealthMarkets, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Declements's use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

41. Seeking redress for these injuries, Declements, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls and text messages to cellular telephones and unsolicited calls and text messages to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls and Texts Sent by HealthMarkets Agents**

42. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called or texted, (2) on the person's cellular telephone number, (3) using substantially the same calling or texting equipment used to call or text Plaintiff.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called and/or texted more than one time within any 12 month period, (2) on the person's residential telephone number, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days,

(4) for substantially the same reason Defendant called and/or texted Plaintiff.

43. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

44. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant utilized an automatic telephone dialing system to call Plaintiff and the members of the Classes;

(b) whether Defendant utilized an automatic telephone dialing system to send text messages to Plaintiff and the members of the Classes;

(c) whether Defendant systematically placed calls to Plaintiff and consumers whose telephone numbers were registered with the National Do Not Call registry;

(d) whether Defendant systematically sent text messages to Plaintiff and consumers whose telephone numbers were registered with the National Do Not Call registry;

(e) whether Defendant sent autodialed text messages and made autodialed calls to Plaintiff and members of the Classes without first obtaining prior express written consent to send the texts and/or make the calls;

(f) whether Defendant's conduct constitutes a violation of the TCPA; and

(g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

47. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT
-12-

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

48. Plaintiff repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference herein.

49. Defendant and/or its agents placed unwanted solicitation calls and/or sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class.

50. These solicitation phone calls and text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class.

51. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

52. In the event that the Court determines that Defendant's conduct was willful or knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Declements and the Do Not Call Registry Class)**

53. Plaintiff repeats and realleges the paragraphs 1 through 47 of this Complaint and incorporates them by reference herein.

54. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

55. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[15]

56. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

57. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone call and/or text message solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

58. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call and/or text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $1,500 in damages for such violations of 47 C.F.R. § 64.1200.

**PRAYER FOR RELIEF**

---

[15] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

CLASS ACTION COMPLAINT
-14-

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) A declaratory judgment that Defendant's text messaging equipment constitutes an automatic telephone dialing system under the TCPA;

e) An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of their unlawful text messaging practices;

f) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

g) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**DANIEL DECLEMENTS**, individually and on behalf of those similarly situated individuals

Dated: July 14, 2019

By: _/s/ Nathan Brown_
Nathan Brown
*Local Counsel for Plaintiff and the putative Class*

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.

201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice motion forthcoming*

---

CLASS ACTION COMPLAINT
-16-